You ready, Mr. Gottlieb? Whenever you want. Ready to proceed. Officer Hawkins and Detective Koenig. Speak up a little bit. I don't know if you need to move the mic a little closer. May it please the Court, Fred Gottlieb representing the appellants, Police Officer Hawkins and Detective Koenig. I'd like to reserve three minutes for rebuttal. Granted. As the Court knows, we address three issues in our briefs. The issue on probable cause, we believe, is fairly cut and dried. Under precedent of cases like Merkle and Orsatti, cases like Wilson and Sherrar, cases like Grohman and Whiting, we believe that Detective Koenig had probable cause based upon the recitation of Officer Hawkins and was not required to conduct any additional investigation to validate the probable cause that he had already found existed. Skipping ahead to punitive damages, we rely primarily upon the briefs and just note that should the Court reverse on either probable cause, I'm sorry, I said punitive damages, but I meant to say fees. On the issue of fees, we rely primarily on the briefs, but should the Court, only to note that if the Court should reverse on either probable cause or on punitive damages, we request that the Court remand for a recalculation of fees based upon diminished success. So with the Court's permission... Right, so the portion of the fees attributable to Koenig would have to go. The portion of the fees attributable to Koenig would have to go and there would be overall diminished success in the case, so the trial court would reevaluate that. Right. So with the Court's permission, I'd like to spend the rest of my time on punitive damages. Before we jump there. Yes. On the probable cause issue. Yes. What offense are you hanging your hat on for the existence of probable cause? Well, all of the denominated offenses, starting with aggravated assault. So I struggle with aggravated assault and I'd like to get your views because there's an intent element and the question is what could a reasonable jury find? And so I tend to think that a jury could just find that the intent part was lacking and there wasn't probable cause for that. Thoughts? The question, Your Honor, is whether, based upon the information available to Detective Koenig, whether Detective Koenig could reasonably conclude that there was aggravated assault. He doesn't have to prove that there was a criminal conviction, right? This is just a probable cause right now. So could he, or a reasonable officer in his shoes, have looked at the facts as presented by- And conclude that nobody intentionally or knowingly caused bodily injury to the officer? He could have. He also could have concluded the opposite direction. Now remember, this isn't a criminal trial. Now, this is just probable cause. And if a reasonable officer could look at the recitation by Officer Hawkins and say, that could have been intentional misconduct by the plaintiff, then that's enough to create probable cause. So as long as there was a reasonable possibility, he doesn't have to prove it. And based upon Hawkins' recitation, Hawkins said that the plaintiff grabbed her collar and pulled- Hawkins said that Ms. Wexler grabbed Officer Hawkins' collar. Now, it's fair for Detective Koenig to hear that and conclude that's intentional. Jury could and may have decided otherwise, but that doesn't matter. What matters is, for probable cause purposes, could Detective Koenig have reasonably concluded that that was intentional conduct by Ms. Wexler? And given that the report was that Ms. Wexler grabbed Officer Hawkins by the collar and then subsequently scratched her arm, he could conclude that that was intentional misconduct. But the jury could conclude, could they not, that everything- all the conduct that you just described was defensive in response to the encounter, and so the intent that's required for the aggravated assault offense wasn't there. They could have just completely- and I'm not saying this is the inference I would draw, but I'm trying to think about the significance of tossing a jury verdict and what inferences were available in that room when they're deliberating. And if your client is hanging, I guess, his hat on aggravated assault, the intent element, to me, leaves room for a jury to come out against you on that. I think it leaves room for a jury to come out on the ultimate question. I agree with that, Your Honor. But this is a probable cause, and the only probable cause question is whether a reasonable officer, or in this case, a reasonable detective, could have concluded that there was an assault. And I don't think any jury could doubt that a reasonable officer could have concluded that. They could disagree with the officer. But to find the absence of probable cause, you have to conclude the officer was being unreasonable in reaching that conclusion. Could he find probable cause without first going through the internal policy steps for assault on police officer investigations? Absolutely. Absolutely. The internal steps are guidelines, but they're not the Constitution. The Constitution very clearly says that once you have probable cause, you don't have to do anything else. That comes from Merkel. That comes from Orsatti. Orsatti specifically uses the phrase, professionally executed investigation. You don't have to have a professionally executed investigation. Once you have probable cause, you no longer have to do anything else. If the probable cause is vitiated, then maybe you have to do something else. But that never happened here. The only information that Detective Koenig had was the interview and the photographs. And in the interview and the photographs, he got a report of what happened, and he believed his colleague, which a reasonable officer could do. With the Court's permission, I'd like to move on to punitive damages. So as the Court knows, there are three guideposts for punitive recovery. Just parenthetically, so if the Court agrees with us on probable cause, then obviously punitive damages against Detective Koenig are out. And we didn't spend a lot of time on the punitive analysis with Detective Koenig, because I think that even if there's liability against him, which I don't think there is for the reasons we've been discussing, but even if there is, I think that the punitive argument against Detective Koenig is particularly weak. Focusing on the punitive damages argument against Hawkins, there are three guideposts, as the Court knows, reprehensibility, proportionality, and comparable awards. And with the Court's permission, I'd like to focus on the first two, reprehensibility and proportionality. So there are five elements of reprehensibility. And I'm going to briefly go through the five elements. But when I talk about them, the case that I want to sort of contrast and compare to and keep in the back of our minds is Washington versus Gilmore. Because Washington versus Gilmore ultimately held that a 10 to 1 ratio was close to the line in that case. And the facts there are far more egregious than the facts here. First factor is whether the harm is economic or physical. We admit that the harm here would be physical, but I think all agree that the physical harm here was extremely minor. The jury found it minor. I don't think plaintiff disputes that it was minor. Second reprehensibility factor is whether there is reckless indifference to the health or safety of others. And although a jury could find reckless indifference to the health or safety of the plaintiff, there is no argument to be made here that there was any reckless indifference to the two of them. Third factor, financial vulnerability. There's no argument that there's any financial vulnerability here. Fourth factor is repeat misconduct. I'm going to skip that one second because that's a little bit more complicated and come back to that. The fifth factor is whether there was any deceit. And we would agree that a jury could look at the facts and find some potential deceit. The fourth factor, repeat misconduct, is probably the most important factor and perhaps the most difficult. But there are two reasons why it is inapplicable here in terms of the reprehensibility analysis. Reason number one is because they're not claiming that the repeat misconduct was violence. They can't. There was no repeat violence. They're claiming that the repeat misconduct was that Officer Hawkins told a story and then kept telling the That's not the sort of repeat misconduct that is cognizable under this prong. That's a jury hearing two sides of a story, agreeing with the other side. It's just a credibility determination. We accept that the jury found Ms. Wexler's story more credible than Officer Hawkins' story. That's not what we're debating here. We're debating whether simply telling the same story over and over again constitutes repeat misconduct. It does not. And the other part about repeat misconduct is that even if that did constitute repeat misconduct, the case law from this court makes clear that the repeat misconduct is much more reprehensible when it occurs across different transactions and different parties. Here, there's no allegation that there were any other instances of this sort of misconduct from Officer Hawkins. So there simply is no misconduct here. So these five factors in the aggregate, particularly when compared to Washington v. Gilmore, which had two verified instances of sexual assault upon a prisoner, this is far less reprehensible. Would you say the $4,000 compensatory award is nominal or material? It's not nominal for sure. And we know for a fact that it's not nominal. What would be nominal? Well, a couple ways to look at that, Your Honor. One is if it's a dollar. The other way it could be nominal, and often this would be a dollar, is if the jury made a finding that it was nominal. The jury here was instructed on nominal damages. The verdict sheet says you can fine for a dollar if you find nominal damages. The jury had every opportunity in the world to find nominal damages. It did not. It found compensatory damages. It found $4,000 of compensatory damages. And it's our view that the maximum baseline ratio should be 4 to 1. Why 4 to 1? Well, the 4 to 1 is what cases like Gore and TXL hold as sort of like the general ceiling. There are exceptions to the 4 to 1 ratio. And I'd like to discuss them briefly, but there are exceptions. But those exceptions don't apply here, so that's why 4 to 1. The reason why the exceptions come up, Planoff argues that there should be an exception for all low damages in 1983 cases. But we know from Gilmore that that's not the way the circuit approaches that sort of exception. So there are exceptions. The reason that Gilmore itself goes from 4 to 1 to what it calls close to the line at 10 to 1 is because of the reprehensibility in Gilmore. The degree of reprehensibility there was extreme. The court found that the quotes from the court that it was reprehensible in every sense of the word. That's from the court. We can't find that here. And it used the word sadistic to describe the defendant's conduct in Washington versus Gilmore. That is not the sort of misconduct that we have here. And in that case, which is still a relatively low number, the amount of the ratio was 10 to 1. This case has far fewer factors of reprehensibility, and we submit that the court should remit to 4 to 1 or 16,000. Thank you, Your Honors. Thank you. We'll get you back on rebuttal. Mr. Malone. May it please the Court, Thomas Malone for Savia Wexler. Good morning. Our laws give leeway to juries to punish and deter wrongdoers with punitive damages. When the wrongs are done by state actors, carrying guns and wearing badges, with the power to take away our freedom, the ability to deprive citizens of liberty, deterrence becomes crucial. Defendants, Police Officer Hawkins and Detective Koenig, both, by the way, still members of the Philadelphia Police Department, and have never suffered any discipline, demotions, penalties as a result of their actions in this case. They concocted criminal charges, felony charges, against an innocent grandmother on her way home from synagogue. If their scheme had succeeded, Savia Wexler, a 63-year-old resident with a full-time job, no criminal record, and three grandchildren, she would right now have a felony record, a felony conviction. She would be right now a convicted felon. She could still be in state prison as this charge concocted by the defendants, Hawkins and Koenig, carried with it a 10-year penalty, a potential 10-year sentence under Pennsylvania state law. As the jury's verdict showed, and as the district court confirmed, these defendants combined to assault and choke Ms. Wexler, falsely arrest Ms. Wexler without probable cause, maliciously prosecute Ms. Wexler over the course of several months, and intentionally, falsely imprison Ms. Wexler in a cell with real criminals, handcuffing her in front of a parade full of So when Koenig, I guess, listens to Hawkins's account of the events and sees the pictures, what more does he need for probable cause? Yes, your honor. There's, there's, when you, when you look at the issue of probable cause, there's a reason why the courts have held that it's a jury question, because it's a factual issue that's intertwined with the detective division with. She's wearing a body camera, as the photos indicate, that were taken by Ms. Wexler at the scene. She's wearing it. This is not a case where you have to just believe your brother officer or your sister officer because she is an officer. This not, should not have been done. What detect, and I know that based on the questions of my I know what you're getting at, and it's to talk about those, those, those guidelines or those procedures. And I wrote down, if you don't mind, I wrote down what the intro to Directive 10.2, Assault on Police Investigation Procedures, what it says. The purpose of this section, this is a, this is a policy and procedure of the Philadelphia Police Department. The purpose of this section is to establish a procedure to follow when conducting an assault police investigation, assault on police investigation. It's a policy to follow. It says in it, the detective, the assigned detective will, all caps, exclamation point, I'm sorry, colon, and then it lists the things the detective must do. This is not a situation where we're asking for the perfect investigation, where we're saying it must be the utmost professional investigation. We're saying that because the allegations are such, where abuses have occurred in the past, where if an officer does wrong, the best defense is a good offense. That's why this procedure was written. That's why it was promulgated. I think that's why Detective Coney, my apologies. I think your friend is correct. We have said that the, these, these internal policies are not coextensive with the Fourth Amendment. Understood. And, and, and, and I came here You cited these cases. I, I, I'm not aware of cases requiring following these procedures. I, I came prepared to argue the directive 10.2 under the guise of punitive damages. Okay. Answering His Honor's direct question, I would suggest that there is a different standard in that detectives have been trained on what the standard is when it comes to a certain type of investigation. In, for instance, with domestic violence cases in Pennsylvania, there are certain rules. The police, they're not supposed to, if they get a report, they're supposed to act on it. They're not supposed to do what they do on every other case. In an assault on police case, there's a reason why you're supposed to photograph the injuries of the alleged defendant. Why? Let me ask you, your friend on the other side argued with some force. You know, Washington versus Gilmore, this is sadistic, repeated, sexual humiliation of prisoners. You, there's no way to say that this case is in the same ballpark as Washington versus Gilmore. Can I, so if, if we said there 10 to 1 is close to the line, how can anywhere near 10 to 1 be appropriate here? You have way over 10 to 1 you're defending here. Correct. In fact, we're asking for double what the ratio is that my friend talked about in his brief. Because the court's original, the jury's original finding was for $500,000 in punitive damages against each. And we, of course, cross appealed to get those restored. Your Honor, what I would suggest in Gilmore, and it wasn't just this court, it was your Honor who wrote that opinion, who said, the offender in that case, the prison guard, did two events. He did, he had a sexual assault, not a rape, but a sexual assault, and then a second sexual assault some years later. What we have in this case are two incidents. One on the street, and one for the several months that occurred after what happened on the street occurred. Because on the street, right outside of this building, and on a beautiful June day, do you not want me to get into it? No, no, no. I mean, we know what the facts are. No, I understand, and I will get- How do these come close to the facts in Gilmore? I don't want to get too deep into the facts that your Honor already knows, and that the court already knows. But what I will say is that in Gilmore, you have two sexual assaults that happened a couple of years apart. In this case, you have what happened on the street, which were two, the jury found two things. The assault, the choking, the battery. That's by Officer Hawkins only. And then you have the retaliation for asking for her badge number, which happened before the choking. So two things the jury found happened on the street. And one was another violation of an internal policy, which is that you're not supposed to choke civilians, pedestrians, people trying to cross the street at a parade route. But also, you have her committing an assault, which is a crime. So you have those two things occurring. And then what compounds it, and I'm not suggesting it's like another sexual assault with a baton, or with one's finger in the buttocks, which is what Gilmore was. But what we had from that point forward is a cover-up, which I would suggest in the guise of state actors, in the guise of police, not prison guards, is analogous, Your Honor. Because when she overreacted, and my friend admits that she assaulted and caused harm to Ms. Wexler. When she did that, it should have been over. She should have said what happened. Instead, she compounded it. Instead, she used the system. She used our laws. She used the power of the police to further subject Ms. Wexler to additional harm, to additional risks for her health and safety, which prison is, Your Honor, to a 63-year-old woman who's 4'11 and a grandmother of three. All right, I got that. But this, Ms. Wexler, sure, she suffered. She got compensatory damages. None of that's being challenged. But Gilmore, that case involved someone who was a long-term prisoner who is vulnerable and at the mercy of this guard, over a sadistic guard, over a substantial period of time. I just have a hard time imagining, you ask a jury, which one of these is worse. I don't see how any reasonable jury could think that Ms. Wexler's, like, the wrongfulness of the officer or the suffering, you know, the intent behind it or any of those other factors of reprehensibility are close to what we said 10-1 is close to the line. Because all the things you're saying, well, it's a crime with Wexler. It's like a worse crime with Washington versus Gilmore. We're also present there. Your Honor, at the end of that opinion in Gilmore with that prison guard, you looked at two other cases that had $200,000 and $250,000 in punitive damages. They weren't as bad either. But yet, the $200,000 and the $250,000 award held. And that's because, in general, these decisions are tough. They involve reasonableness and totality of the circumstances, which my law school professor said everything I ever encountered in law school would, and even as a lawyer would. And half of them have. This is not a contest, if you will, Your Honor, between what that sadistic prison guard did and what Officers Hawkins and Detective Kony did. But I would argue that using the system against a victim, because my friend admits that Ms. Hawkins was the victim on the street. Using the system against her in the way that they did was horrendous. It was not the same. It was not the same as what a prison guard has in terms of access to a vulnerable prisoner, but it was horrendous. And she was vulnerable in that moment, Your Honor. She has no powers at that point. She can't say, bring my lawyer in here. Let my lawyer talk to your supervisor. Let my lawyer talk to the district attorney's office. Look at what they did. They took half of the facts on purpose, Judge. The detective says, I pre-interviewed her. I didn't do a question and answer. I didn't ask her questions and record her answers. I didn't video record it at all. I did a pre-interview, and then I did my report. Does he ask her about the injuries to Ms. Wexler? No. Does he ask her where the body cam footage is or endeavor to go look at it? No. Does he say, why on your two reports that you both filled out, why does it not say there are witnesses? There were 17 police officers, according to the, right on the scene, on the parade route, doing crowd control. Why didn't they do that? The jury already answered this. To substitute, eight years later, what the jury heard everything on, to substitute our judgment, this was a factual question. The jury determined malice, malicious prosecution against Kony. This was not a close case, Your Honor. And I'm not suggesting that when getting back to the punitives, we should compare this to every other, but two officers, two sworn officers getting together, ignoring the promulgated procedures that protect against this very situation, ignoring them. Now, I want to talk about one other thing, because they didn't just ignore the body cam. They didn't just ignore the policy that required them to do certain things. They also ignored that CVN. In a criminal case, that CVN should have been discovery. Ms. Wexler should have gotten it, and it should have been an obvious counter to the aggravated assault charge. They had decided to give her a CVN, a code violation notice. That's for when you don't pick up after your dog, or when you neglect to shovel your snow after a snowstorm. This document should have been in the detective's file, and it wasn't, and it wasn't for a reason. And it's the same reason I've been getting at since the beginning. They concocted these criminal charges. They did it together, and the jury so found. Judge Roof so confirmed. So I get the look back. I understand the courts looking at these cases. Every case they cited in terms of Third Circuit cases involving probable cause where it was upheld, none of them involved a situation where one officer said, I just believe them because they were an officer. I didn't even have them sign their statement, which is a signature line, because they were an officer. And I didn't do anything that my department told me to do on a certain category of cases because of the inherent dangers that this case ended up bearing out. That's what we have here, and none of the cases my friends cited come close to addressing that situation. Excuse me one second. So since my friend agrees that Officer Hawkins did what she did at the scene, caused harm, we do have to get back a little bit to that question, I think, in terms of the ratio of that $6,000. It is, Your Honor, going back to your question of my friend, it is more in line with nominal damages than it is the finding, for instance, in Gilmore, where it was $25,000 for one and $20,000 on the other, I think if I remember correctly, on the two sexual assaults. It is different from that. They were told that she had to hire a lawyer for that preliminary hearing, and she did. He's standing here, and just as much as they were guessing that they'd put that $6,000 for emotional harm, I would guess that they put it there for what she had to spend for an attorney based on a municipal court preliminary hearing, which happened in this case, where Officer Hawkins took the stand. And in terms of that continuing conduct, in terms of those five factors, she did not just hide the fact that she choked Ms. Wexler, because in that interview, the detective doesn't even ask the officer, what do you mean by control hold? What did you do? It's not even in there that she choked Ms. Wexler, which she did, because we have pictures of the injuries. Officer O'Reilly, the first officer on the scene, saw the injuries. It's not a coincidence that the jury saw and heard all of this. I'm giving you a small piece of it, but the jury heard and saw all of it, and that's why both the probable cause and the, to some extent, although it's de novo, the punitive damages, the jury's decision should be given some weight. Your Honor talked about overturning and throwing out a jury's verdict. I'd suggest that this, over the course of a four or five day trial, where both of these officers testified twice, I called them in my case in chief, the defense called them, and the jury got to look at them. The jury got to listen to them. I see that my time is up. All right. Thank you, Mr. Muller. Mr. Gottlieb, when you're ready, you had reserved three minutes for rebuttal. Thank you, Your Honor. I just wanted to briefly go back to my conversation with Judge Bovey about the nature of what a jury question is for probable cause, and when you evaluate probable cause and you're looking at Detective Kainey could have believed her, he could have disbelieved her. I think when you have that, normally our instinct is that's a perfect question for a jury, but in the probable cause context, that actually is probable cause as a matter of law. The fact that you could reasonably go in either direction, that's what creates probable cause as a matter of law under the jurisprudence. If you look at cases, in sort of the extreme cases, I think, are Sherrar versus Felsing and Wilson versus Russo, which we cite in our briefs. In those cases, the arresting officer was met with conflicting information. In Wilson, there was an identification, but the person identified was several inches in height different than the actual perpetrator. So the question was, should the officer have realized, and maybe the officer could have realized, but the bottom line is that he also, it was close enough that the conflicting information, which usually leads to a trial, created probable cause in that case. I think your friend's saying he didn't consider conflicting information. He considered one side only and just made a snap judgment that that was probable cause. Correct. Correct. That is their argument. And to that, I was right. So there was no conflicting information. And could the investigation have been better? Yes. But there's no allegation that he learned the conflicting information and turned a blind eye to it. The allegation is he interviewed Hawkins and then stopped. And our position is under Merkel and Orsatti, that's enough. So if the court doesn't have any more questions, we would rest on those arguments and ask the court to reverse answer judgment for Detective Koenig and to cap the punitive damages against Officer Hawkins at $16,000 and to remand on the fee determination. All right. Thank you. We thank both parties for their helpful briefing and oral argument. We'll take them out under advisement. All right. And we'll go off the record.